# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

FELIX J. BRUETTE, JR.,

    Plaintiff,

v.                                                      Case No. 17-C-286

SECRETARY OF INTERIOR and
STOCKBRIDGE-MUNSEE COMMUNITY,

    Defendants.

---

## DECISION AND ORDER GRANTING MOTION TO DISMISS

---

Plaintiff Felix J. Bruette, Jr. brought this pro se civil action against the Secretary of the United States Department of Interior ("DOI")[1] and the Stockbridge-Munsee Community ("Community"), a federally recognized Indian tribe. Bruette brought this action asking the court to vindicate his right to be recognized as a historical tribe and prevent the Community from acting as a historical tribe. Bruette claims that Congress did not empower the Secretary with the authority to convey or allocate the rights or property of a historical tribe. ECF No. 1 at 2. Bruette also claims that, as the direct descendant of a Stockbridge-Munsee Tribe member who was part of the Treaty of 1856 between the United States and the Tribe,[2] he is entitled to a "direct inalienable right to hold

---

[1] Although unnamed in the complaint, the current DOI Secretary is Ryan Zinke.

[2] Because this decision discusses the history and federal recognition of an Indian tribe, it is important to take a moment to distinguish the use of the terms "tribe," "Tribe," and "Community" throughout this decision. The term "tribe" is used when referring to a general Indian tribe. The term "Tribe" is used when referring to the descendants of the Stockbridge-Munsee Indians without regard to their federal recognition status. The term "Community" is used when referring to the Stockbridge-Munsee Community, a federally recognized Indian tribe, as recognized by the DOI since 1937.

the same together with all the rights privileges, immunities, and appurtenance of whatso ever nature." *Id*. at 3.

This, however, is not Bruette's first attempt to seek federal vindication of these rights. In 2014, Bruette filed a similar pro se civil action asking the court to recognize him, and other direct descendants, as a historical tribe. *See Bruette v. Jewell*, No. 14-CV-876, 2015 WL 5022591, at *1 (E.D. Wis. Aug. 24, 2015). The court found that Bruette had failed to provide a source of jurisdiction under which the court could hear Bruette's claims. *Id*. at *5 6. Additionally, the court found that the political question doctrine barred the court from entertaining Bruette's request seeking tribal recognition. *Id*. at *6. Therefore, the court dismissed Bruette's first attempt for lack of subject-matter jurisdiction. *Id*. at *7.

The case is currently before the court on the Secretary's motion to dismiss. The Secretary contends that Bruette has failed to state a claim under Fed. R. Civ. P. 12(b)(1) and (6) and moves to dismiss the claims. Specifically, the Secretary contends that Bruette's claims are barred by res judicata and the statute of limitations, and that this court does not have federal subject-matter jurisdiction over them. For the reasons set forth below, I conclude that, like Bruette's first case, this court lacks subject-matter jurisdiction over Bruette's claims and that his action must be dismissed in its entirety.

**BACKGROUND**

Some understanding of the history of the Stockbridge and Munsee Tribe in Wisconsin is required to understand Bruette's first lawsuit and current claims. Fortunately, that history has been recounted in two previous decisions concerning a dispute with the State of Wisconsin over the boundaries of the Tribe's reservation in western Shawano County. *See Wisconsin v. Stockbridge-*

*Munsee Community*, 366 F. Supp. 2d 698 (E.D. Wis. 2004), *aff'd*, 554 F.3d 657 (7th Cir. 2009). A long and detailed version of that history appears in Magistrate Judge Patricia Gorence's decision granting the State's motion for summary judgment, and a more abridged version appears in the Seventh Circuit's decision affirming it. The abridged version of the abridged version appears in my order dismissing Bruette's first federal case and is sufficient for our purposes here.

**I. History of the Stockbridge-Munsee Indians in Wisconsin**

The Stockbridge-Munsee Indians are comprised of descendants of the Mohican Tribe who migrated westward and eventually arrived in Wisconsin in the 1820s. In 1856, the United States entered into a treaty and created a reservation for the Tribe consisting of two townships (Bartelme and Red Springs) in Shawano County, Wisconsin, some 40 miles northwest of Green Bay. Treaty with the Stockbridge and Munsees, Feb. 5, 1856, 11 Stat. 679. In 1871, Congress passed an act providing for the public sale of most of the land (with the proceeds to be distributed to or held in trust for tribal members), allotment of the remaining land to tribal members who elected to remain, and a new enrollment of the Tribe. Act of Feb. 6, 1871, ch. 38, 16 Stat. 404. Those entrusted with creating the tribal roll, however, excluded more than half the Tribe, including Bruette's ancestor. In 1893, in response to reports that the exclusion of many of the tribal members was obtained by fraud, Congress passed another act in an attempt to restore them to tribal membership. Act of Mar. 3, 1893, ch. 219, 27 Stat. 744. The 1893 Act required the Secretary of Interior to create a new roll of the Tribe to include all those who were or became members of the Tribe at the time of the Treaty of 1856 and their descendants who have not separated from the Tribe. The Act also provided that all members "who entered into possession of lands under the allotments of 1856 and 1871, and who by themselves or their lawful heirs have resided on said lands continuously since, are hereby declared

3

to be owners of such lands in fee simple, in severalty, and the Government shall issue patents to them therefor." *Id.* In the event of a conflict between the allotments under the 1871 Act and the allotments of 1856, the 1893 Act provided that the latter shall prevail. *Id.* at 745.

It soon became apparent, however, that there would not be enough land for those who had claims under the 1893 Act. This is not surprising since the addition of those previously excluded increased tribal membership, while at the same time three-quarters of the Tribe's land had been sold in 1871. Although the enrollment was apparently completed, the allotment process proved difficult and was ultimately suspended pursuant to a Senate Resolution. *See* 1895 Annual Report of the Commissioner of Indian Affairs, ECF No. 12 25.

In 1900, with the DOI's approval, the Tribe presented Congress with a proposal to settle all of the United States' obligations to the Tribe under the Treaty of 1856, any act of Congress, or otherwise. The plan called for allotments of the unsold portion of the reservation and of additional land to be purchased by the United States, or cash in lieu of land. Unlike under previous laws, the proposed allotments would be alienable. Congress failed to act on the proposal for several years due to concern about how to fund the measure. *See Stockbridge-Munsee Community*, 554 F.3d at 661. Congress ultimately enacted the plan into law in 1906, with funding to come from the Tribe's treasury. *See* Act of June 21, 1906, ch. 3504, 34 Stat. 325, 382 83. Following these allotments, until the 1930s, the reservation was essentially treated as nonexistent. But in 1937, after the enactment of the Indian Reorganization Act of 1934, the Stockbridge-Munsee people organized the "Stockbridge-Munsee Community," a federally recognized Indian tribe residing on what remains of its 1856 reservation in Shawano County, where it is still located today.

As part of becoming a federally recognized tribe again, the Community passed a constitution on November 18, 1937. Constitution and By-laws of the Stockbridge-Munsee Community, Nov. 18, 1937[3]. Article III of the Community's constitution defined membership as "all persons whose names appear on the Stockbridge Allotment Roll of 1910 and who are residing within the original confines of the Stockbridge Reservation . . . on the date of the adoption of this Constitution." *Id*. It also stated that the "Tribal Council shall have authority to promulgate ordinances . . . governing the adoption of new members . . . ." *Id*. In 1940, the tribal council did just that and promulgated a membership ordinance that declared:

> All persons of Stockbridge-Munsee Indian blood whose name appears on the roll of 1871 and any subsequent roll including the roll of 1910, are hereby adopted into membership of the Stockbridge-Munsee Indian Community. Provided, that any person whose name appears on the 1871 Stockbridge-Munsee roll or any subsequent roll up to and including the roll of 1910 of the Stockbridge-Munsee Indians of Wisconsin, who has relinquished their membership, or their entitlement to membership, or have been disenrolled for any reason shall not be members of the Stockbridge-Munsee Community.

Tribal Ordinances, ch. 44.4. This ordinance still governs the Community's membership requirements today.

**II. Bruette's First Federal Lawsuit**

In 2014, Bruette filed a pro se civil action against Sally Jewell, the Secretary of the United States Department of Interior. *Bruette*, 2015 WL 5022591, at *1. Bruette alleged that he was a direct descendant of Stephen Gardner, who was a party to the Treaty of 1856 and that he still resided within the original boundaries of that treaty, as had his father, grandmother, great-grandfather, and Gardner. *Id*. Therefore, Bruette alleged that he, and the other direct descendants, should be

---

[3] The Stockbridge-Munsee Community's Constitution and Bylaws are available online at: http://www.mohican.com/ordinances/.

recognized as a historical tribe. *Id*. Specifically, Bruette asserted three claims in his complaint:

> 1. I claim that in 1895 the Department of Interior unlawfully suspended the Act of Congress, March 3, 1893, under the guise of a senate resolution. January 31, 1895. "Whereas complaint is made of the results of the carrying out by the Secretary of the Interior the act of Congress entitled an act for the relief of the Stockbridge and Munsee Indians, in the State of Wisconsin, approved March 3rd, 1893."
>
> 2. I further complain that the Department of Interior has no legal authority to suspend any act of Congress.
>
> 3. I and all the descendants of Stephen Gardner claim the Department of Interior is in breach of its fiduciary duties by failing to establish the official roll of actual members under the provisions Congress ordered.

*Id*. at *2. The Secretary responded with a motion to dismiss under under Fed. R. Civ. P. 12(b)(6) or, alternatively, for summary judgment. *Id*. at *3. The Secretary argued that the case was moot because the roll required by the 1893 Act had in fact been taken. *Id*. Alternatively, the Secretary argued that the action was barred by the six-year statute of limitations for claims against the Government under 28 U.S.C. § 2401(a). *Id*. In response to the motion, Bruette argued that the Secretary was interpreting his claim too narrowly by focusing on the taking of the roll alone. *Id*. Bruette wrote: "The rights I ask the court are the same rights Congress affirmed to my Grandfathers on March 3, 1893. The right to occupy tribal lands established by treaty, lands held in common with individual land selections, and to share in pro rata tribal funds." *Id*.

Because the exact relief sought was unascertainable, the court scheduled the matter for a hearing. *Id*. at *4. At the hearing, Bruette asserted the 1893 Act re-affirmed the rights of Tribe members under the Treaty of 1856, including himself as a direct descendant, to occupy land and exist as a tribe. *Id*. He stated that his ancestor, Stephen Gardner, re-located, settled and improved a piece

of land pursuant to the Treaty of 1856; that Gardner had fought in the Civil War from 1862 to 1865; and that he was ultimately forced off his land pursuant to a patent issued under the 1871 law, which was obtained by fraud on the Tribe by a political faction of the Tribe. *Id*. When asked directly what he wanted the court to do in his case, Bruette said:

> We would be granted the rights that our grandfather had that was reaffirmed by Congress not only in 1893, those rights were reaffirmed in 1906 and 1916, and yet the Department of Interior has failed to be in compliance with those provisions which established our sovereignty and jurisdiction as tribes.
>
> We are a tribe. We are the last members of that tribe. But we never took the land. We never took the money. We have nothing today. Our grandfathers stood outside in 1871, were being ran off their own reservation. The house that he built he was being taken    and we are still in that same position today because the Department of Interior failed to be in compliance with those provisions. Those provisions separated those members who received from the tribe and those members who had never have. And those who have not received are to maintain their tribal rights, their treaty rights.

*Id*. at *4. Bruette repeatedly reiterated to the court that he was seeking tribal recognition because "[i]t would give us an opportunity to raise our family out of poverty. Because the [DOI] failed to carry out those provisions in 1893 we remained in poverty    we were excluded from being a member of our own tribe." *Id*.

After the hearing, both parties were offered the opportunity to supplement their arguments in favor of or and in opposition to the Secretary's motion to dismiss. *Id*. at *5. In her supplemental brief, the Secretary now construed Bruette's claims as one for tribal recognition and argued that there were additional grounds on which her motion to dismiss should be granted: that Bruette's claims were barred under the political question doctrine; that the United States is immune from such suits; and that Plaintiff had not exhausted administrative remedies under the Administrative Procedures Act. *Id*. Additionally, the Secretary informed the court that in 2003 Bruette sent the

7

DOI a letter expressing his intent to be recognized as a historical tribe but he had never actually gone through the administrative process of applying for federal recognition. *Id*. at *6.

In his own supplement, Bruette did not respond to the Secretary's new arguments except to reiterate that the claim was not moot and to note that the rights of Stephen Gardner's descendants are based on the Treaty of 1856 and that "[n]o Administrative Law or Procedure can interfere with those rights." *Id*. at *5.

In ruling on the Secretary's motion to dismiss, the court first addressed whether it had subject-matter jurisdiction to hear Bruette's claim and found that it did not. *Id*. The court explained that neither party had suggested a basis for jurisdiction and that there was no clear statement by the United States government waiving its sovereign immunity to suit. *Id*. The court identified two possible sources of jurisdiction: the General Allotment Act of 1887, 24 Stat. 388, as amended, 25 U.S.C. § 331 *et seq.*, and the Indian Tucker Act, 28 U.S.C. § 1505. *Id*. at *5 6. The court found that neither was applicable to Plaintiff's claims, and even if they were, the claim would have accrued too long ago and would be barred by the six-year statute of limitations for "every civil action commenced against the United States." *Id*. at *5 (citing *Christensen v. United States*, 755 F.2d 705, 707 (9th Cir. 1985)). Additionally, the court found that the political question doctrine barred the court from reviewing the executive branch's determination of federally recognized Indian tribes. *Id*. at *6. Therefore, the court concluded that it lacked jurisdiction over Bruette's claims and dismissed his case. *Id*. at *7.

Bruette appealed his dismissal for lack of jurisdiction to the United States Court of Appeals for the Seventh Circuit. *Bruette v. Jewell*, 638 F. App'x 528, 528 (7th Cir. 2016). The Seventh Circuit dismissed the case for failure to comply with Fed. R. App. P. 28(a) because Bruette failed

8

to develop an argument to challenge the district court's decision. *Id*. Therefore the Seventh Circuit did not address the merits of the district court's decision. *Id*.

**III. Bruette's Current Claims**

On February 28, 2017, Bruette filed this pro se civil action against the Secretary and the Community. ECF No. 1. He alleges that when Congress passed the Indian Reorganization Act in 1934 it did not authorize the Secretary to convey or allocate the rights or property of a historical Indian tribe that had been established by treaty. *Id*. at 2. Because of this, Bruette asserts that the correct historical Stockbirdge-Munsee tribe is the tribe established by article five of the Treaty of 1856, not the Community that was formally recognized by the Secretary in 1937. *Id*. at 2 3. Bruette asserts that he, and other direct descendants, are entitled to "hold the same together with all the rights privileges, immunities, and appurtenance of whatso ever nature" that the Community is currently asserting. *Id*. at 3. Bruette asks the court to:

> 1) Stop the DOI and the Community from conveying or allocating treaty rights or property in the states of Wisconsin or New York.
>
> 2) Eliminate the Community's 1940 membership ordinance and reaffirm that article III of the Stockbridge-Munsee constitution governs membership of the tribe.
>
> 3) Grant him declaratory, compensatory, and punitive damages.

*See id*. at 4.

On July 25, 2017, the Secretary filed an amended motion to dismiss[4] Bruette's claims for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failing to state a claim upon which relief could be granted, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 12. The

---

[4] The Secretary filed his original motion to dismiss on May 1, 2017. ECF No. 9. This motion was denied without prejudice for failing to comply with the court's local rules. ECF No. 11.

9

Secretary asserts that res judicata prevents Bruette from bringing these claims because they could have been brought during his original suit. ECF No. 13 at 7 9. The Secretary also asserts that even if res judiciata did not bar the suit, that the court lacks jurisdiction over Bruette's claims. *Id*. at 9 11. Finally, the Secretary asserts that Bruette's claims are also barred by the six-year statute of limitations that applies to any civil action filed against the United States. *Id*. at 11 12.

On August 14, 2017, Bruette filed his response to the Secretary's motion to dismiss. ECF. 15. In it, he argues that res judicata cannot bar his case because *"[t]he central issue is not treaty, but the legal standing of an Indian Community* by the Department of Interior in 1937, organized without regard to past Tribal Affiliation." *Id*. at 1 (emphasis added). Therefore, Bruette's primary purpose for litigation appears to be to have himself, and other direct descendants, declared the correct historical tribe and to have the Community repudiated as a historical tribe. Breutte also argues that his motion was within the statute of limitations because the discovery date for his 2014 case was August 24, 2015. *Id*. As to the court's jurisdiction, Bruette offers only that "Federal question jurisdiction powers the court jurisdiction." *Id*.

On August 25, 2017, the Secretary filed his reply to Bruette's response. ECF No. 16. The Secretary asserts that the issue of the Community's legal standing is barred by res judicata because Bruette could have brought this claim in his first case. *Id*. at 2. Additionally, the Secretary argues that Bruette offers no explanation for why the discovery deadline date is pertinent or why he failed to bring this suit for decades after its accrual. *Id*. at 2. Lastly, the Secretary highlights that Bruette still has failed to offer a source of jurisdiction for the court to hear his claims.

**ANALYSIS**

**I. Jurisdiction**

The threshold issue the court must address is whether it has jurisdiction over the claim Bruette has asserted. Federal courts are courts of limited jurisdiction, which means they can only hear and decide the kinds of cases that the Constitution and Congress authorize them to hear. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). This court's original jurisdiction extends to cases that "arise under" federal law, of course, but the plaintiff in such a case must also identify some statute creating a federal cause of action. *Int'l Union of Operating Eng'rs v. Ward*, 563 F.3d 276, 281 (7th Cir. 2009) ("[W]hen the basis of the action is a federal statute, a federal cause of action must exist as well for a federal court to hear a given claim; the general grant of federal question jurisdiction contained in [28 U.S.C. § 1331], without a federal cause of action, is not enough."). Additionally, "[j]urisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citations omitted).

Like his first case, Bruette again fails to offer a source of jurisdiction for the court to hear his claims. The Secretary identifies two possible sources of jurisdiction and argues that neither applies: the Little Tucker Act and the Administrative Procedures Act ("APA"). The Little Tucker Act, 28 U.S.C. § 1346(a), states that a district court shall have original jurisdiction over civil actions under $10,000 against the United States that are found upon the Constitution, any act of Congress, or any regulation of an executive department. However, the Little Tucker Act is a jurisdictional statute, which "does not create any substantive right enforceable against the United States for money

11

damages." *United States v. Testan*, 424 U.S. 392, 399 (1976) (interpreting the parallel language of the Tucker Act, 28 U.S.C. § 1491); *see also Kipperman v. McCone*, 422 F. Supp. 860, 868 (N.D. Cal. 1976) (finding that the Supreme Court's interpretation of the Tucker Act controlled the court's interpretation of the Little Tucker Act). Therefore, the Little Tucker Act alone does not waive the United State's sovereign immunity. Rather, in order to proceed under the Little Tucker Act, Bruette must identify a statute creating his substantive right to money damages. He has not done so.

Additionally, the APA is inapplicable to establish jurisdiction over Bruette's claims. The APA provides a conditional, limited waiver of sovereign immunity. 5 U.S.C. § 702. Section 702 provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *Id*. However, in order for the APA to apply, Bruette must allege a legal wrong caused by an agency action. The only actions that Bruette challenges are 1) the Community's 1940 membership ordinance and 2) the recognition of the Community as a historical legal tribe. The Community's 1940 membership ordinance is not an action by a federal agency subject to review under the APA. Furthermore, as discussed in greater detail below, the Community's 1940 membership ordinance is not subject to judicial review.

The only other action Bruette alleges is the recognition of the Community as a historical tribe. However, even construing the Community's federal tribal recognition as action by the DOI, Bruette's APA claim must fail. First, as described in further detail below, tribal recognition is a political question that falls beyond the review of the courts. Second, the Secretary recognized the Community as a federally recognized tribe in 1937; therefore, Bruette's claim is barred by the six-year statute of limitations on claims against the United States. 28 U.S.C. § 2401(a); *see Solid Waste*

*Agency, Inc. v. U.S. Army Corps of Eng'rs*, 191 F.3d 845, 853 (7th Cir. 1999) ("There is a general six-year statute of limitations for civil actions against the United States found in 28 U.S.C. § 2401(a), which applies to lawsuits brought pursuant to the APA.") (citations omitted). Bruette has offered no argument for why the six-year statute of limitations should not bar his claim which arose decades ago when the Secretary recognized the Community in 1937 and was acknowledge by Bruette at least as early as 2003 when he expressed a desire to be federally recognized as a tribe to the DOI.[5]

**II. Tribal Recognition and Repudiation**

To the extent that Bruette seeks tribal recognition of himself and his relatives as a historical tribe, or the repudiation of the Community as a historical tribe, this court has no authority to grant such relief. It has been long established that "questions whether, to what extent, and for what time they shall be recognized and dealt with as dependent tribes . . . are to be determined by Congress, and not the courts*." United States v. Sandoval*, 231 U.S. 28, 46 (1913). As explained in *Miami Nation of Indians v. United States Department of Interior*, the criteria for federal recognition are set forth in regulations promulgated by the executive branch of government under powers delegated to it by Congress. 255 F.3d 342, 345 46 (7th Cir. 2001); *see* 25 U.S.C. §§ 2, 9; 25 C.F.R. § 83.7(a) (g). What's more, as the Seventh Circuit explained in *Miami Nation*, federal recognition "lies at the heart of the doctrine of 'political questions.'" 255 F.3d at 347. As it relates here, this doctrine "identifies a class of questions that . . . [is] not amenable to judicial resolution because the relevant considerations are beyond the courts' capacity to gather and weigh . . . ." *Id.* This means

---

[5] Because I have determined that this court does not have jurisdiction over Bruette's claims against the United State, I need not address the Secretary's remaining res judicata argument.

that it is not appropriate for this court to review the executive branch's determination as to who is, or is not, a historically recognized tribe.

**III. The Community's Sovereign Immunity to Suit**

To the extent that Bruette seeks to bring suit against the Community, his claims are barred by the doctrine of sovereign immunity. "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998) (citations omitted); *see also Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991) ("Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation."). Therefore, the court's jurisdiction to entertain cases against the Community is defined by Congress or the Community's consent. *United States v. Sherwood*, 312 U.S. 584 (1941) (explaining that sovereign immunity "and the terms of [an immune party's] consent to be sued in any court define that court's jurisdiction to entertain the suit"). Plaintiff has not identified a waiver of the Community's sovereign immunity. Because the court's jurisdiction over the Community is dependent on its consent, the court cannot take the Community's inaction as a waiver; rather, the court must raise the issue of jurisdiction and sovereign immunity *sua sponte*. *Willis v. United States*, 600 F. Supp. 1407, 1411 (N.D. Ill. 1985); *see also Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1100 (9th Cir. 1994) ("[T]he [tribe's] failure to appear specially does not waive its sovereign immunity, since sovereign immunity is a jurisdictional defect that may be asserted by the parties at any time or by the court sua sponte.") (citation omitted).

Additionally, the court is required to address the Community's sovereign immunity pursuant to 28 U.S.C. § 1915(e). On March 1, 2017, the court granted Bruette's motion to proceed in forma

pauperis. ECF No. 3. Section 1915(e) requires that for cases proceeding in forma paueperis, "the court shall dismiss the case at any time if the court determines that . . . the action . . . seeks monetary relief against a defendant who is immune from such relief." *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (explaining that in the Prison Litigation Reform Act "Congress added failure to state a claim and seeking monetary relief from a defendant immune from such relief as grounds for sua sponte dismissal of *in forma pauperis* cases. "); *see, e.g.*, *Wemple v. All Ill. Judicial Cirs.*, 778 F. Supp. 2d 930, 933 (C.D. Ill. 2011) (finding that sovereign immunity required the case to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii)).

Therefore, Plaintiff's claims, which arise from and pertain to how the Community defines its members, are barred by the doctrine of sovereign immunity. Congress has explicitly provided tribes with the power to define their tribal membership in their constitutions and bylaws and to amend them, if necessary. 25 U.S.C. § 5123.[6] Plaintiff has not identified a statute where Congress abrogates those rights. Furthermore, courts have explained that "[a] tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n.32 (1978) (citations omitted). Therefore, the court does not have jurisdiction over conflicts arising with how the Community defines its membership, whether it be by its constitution or its 1940 membership ordinance.

---

[6] Section 5123 does require the Secretary of the Interior to approve a tribe's constitution, bylaws, and amendments. Both the Community's constitution and its 1940 membership ordinance were approved by the DOI. *See* Constitution and By-laws of the Stockbridge-Munsee Community, Nov. 18, 1937 and Tribal Ordinances, ch. 44.4.

## CONCLUSION

For all these reasons, I conclude that this court lacks subject-matter jurisdiction over Bruette's claims against both the United States and the Stockbridge-Munsee Community. The Secretary's motion to dismiss (ECF No. 25) is **GRANTED**. The action is **DISMISSED**. The Clerk of Court is direct to enter judgment accordingly.

Dated this  20th  day of September, 2017.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge